[L. A. No. 6412.   Department One.—July 13, 1921.]

## ISABELL GROSS, Respondent, v. I. M. BURNSIDE, Appellant.

[1] Negligence—Collision of Automobile With Pedestrian—Excessive Rate of Speed—Support of Finding.—Where, in an action for damages for personal injuries alleged to have been sustained by the plaintiff as a result of her being run down by defendant's automobile while it was driven by him, the evidence was uncontradicted that the night was dark, the place insufficiently lighted, the street slippery, and that a street-car obstructed the view, it cannot be held that the court was not justified in finding that the defendant was negligent in driving his car at an excessive rate of speed, although at the time of the accident he was driving at the lawful rate of fifteen miles per hour.

[2] Id.—Failure to Sound Horn—Support of Finding.—In such an action, a finding that the defendant negligently failed to sound the horn of his car or give any signal of warning must be sustained where the plaintiff and the party with her testified that they did not hear the horn, and neither defendant nor the party accompanying him gave any testimony on the subject.

[3] Id.—Failure to Use Brakes—Support of Finding.—In such an action, it cannot be said that a finding that the defendant negligently failed to use the brakes of his automobile is unsupported by the evidence where the evidence showed that he negligently failed to sound his horn and made no attempt to use the brakes until it was apparent that there was going to be a collision.

[4] Id.—Contributory Negligence—Insufficiency of Evidence.—In such an action, it cannot be said as a matter of law that the plaintiff was guilty of contributory negligence in stopping in the middle of a heavily traveled street, and in failing to keep a lookout for traffic, where she testified that before leaving the curb and also before stopping, she looked up and down the street, but failed to see defendant's machine because her view was obstructed by a street-car. .

APPEAL from a judgment of the Superior Court of Los Angeles County.   Paul J. McCormick, Judge.   Affirmed.

The facts are stated in the opinion of the court.

1. Speed of automobile as negligence, notes, 25 L. R. A. (N. S.) 40; 38 L. R. A. (N. S.) 488; 51 L. R. A. (N. S.) 993.

Scarborough & Bowen for Appellant.

Joseph Scott and A. G. Ritter for Respondent.

LAWLOR, J.—This is an appeal by the defendant from a judgment for the plaintiff in an action for damages for injuries alleged to have been sustained by the plaintiff as a result of her being run down by defendant's automobile while it was driven by him. The case was tried by the court sitting without a jury.

The evidence shows that the accident occurred on the thirteenth day of November, 1919, at about 9 P. M., near the intersection of Sunset Boulevard and Echo Park Avenue, in the city of Los Angeles. The night was dark and the corner was poorly lighted by an arc-light. It had been raining and drizzling earlier in the day, and the street was wet and slippery. On Sunset Boulevard the car tracks are double and on Echo Park Avenue single. The Echo Park Avenue tracks turn the corner toward the east and join the northern tracks on Sunset Boulevard. At the time in question a car of the Echo Park Avenue line had run out across Sunset Boulevard so far that the front of the car had crossed the northern track of the boulevard. Occupying this position, the car completely obstructed the north side of the boulevard, from the car tracks to the curb, making it necessary for one traveling west on the boulevard to turn out into the middle of the street to clear the southern end of the car. Just before the accident occurred respondent and one Mrs. Mary Jackman started across the boulevard from the northwest to the southwest corner of the intersection with Echo Park Avenue. Mrs. Jackman walked straight across, and respondent went diagonally to the right. While crossing, respondent looked up and down the street to see if there were any danger from traffic, but her view to the east was obstructed by the Echo Park Avenue car extending out across the northern side of the boulevard. Mrs. Jackman continued on across the street. When about halfway across respondent stopped and, facing west, stooped over to pick up an article from the street.

About this time appellant, accompanied by one Harry Furlott, was driving his machine west on the north side of Sunset Boulevard. He turned out to go around the left or southern end of the Echo Park Avenue car. The court

found that at this point the machine was traveling at the rate of about fifteen miles an hour. According to appellant's testimony, after he passed the street-car he saw respondent, who had not yet stopped; that he judged she had ample time to cross in front of the automobile; that he assumed she would continue across the street, and that for this reason he did not sound his horn. It was at this time respondent stopped and stooped over. Mrs. Jackman, who had arrived at the south curb, screamed, "Belle, look out for the machine." Appellant put on his brakes. The automobile skidded and turned almost completely around, the rear wheels describing an arc to the right. Respondent was struck, receiving the injuries complained of. She testified she did not at any time see the automobile and that Mrs. Jackman's warning was the first she knew of its approach.

The first point urged by appellant for reversal is thus stated:

"I.   The evidence shows that the defendant was operating his auto at the time of the accident in a careful manner, and that he committed no act of negligence which proximately caused the plaintiff's injuries."

The court found appellant to have been negligent in these particulars: (1) That he drove his machine around the end of the street-car at an excessive rate of speed, to wit, about fifteen miles an hour. (2) That he failed to give any warning. (3) That he failed to use his brakes after he passed the street-car, and that he failed to have proper equipment on the automobile.

[1] Appellant contends there was no negligence on his part, because fifteen miles per hour is the lawful rate of speed at such intersections, and nothing in the circumstances of this case made it unlawful. While this is the legal rate of speed, yet it cannot be held that under the circumstances shown the court was not justified in finding that appellant "negligently and carelessly drove said automobile at said intersection on the left hand or southerly side of said Pacific Electric car, then standing on Echo Park Avenue car track, at an excessive rate of speed, to wit, about fifteen miles per hour." The evidence was uncontradicted that the night was dark, the place was insufficiently lighted, the street was slippery, and the street-car obstructed the view. While under other circumstances fifteen miles an hour might not

be an excessive rate of speed, it may well have been excessive in this particular situation. Appellant testified he was driving carefully and had slowed down when he came to the street-car, but it was for the trial court to determine whether he was driving carefully and at a proper rate of speed under the circumstances.

[2] The court also found " . . . that said defendant negligently and carelessly failed to sound the horn, or give any signal of warning whatever by which plaintiff might be warned of the near approach of said defendant's automobile. That after said defendant passed said Pacific Electric car he negligently and carelessly failed to notice said plaintiff, or to use the brakes of his automobile for stopping said automobile, and also failed to have proper equipment of said automobile at said time, but on the contrary negligently and recklessly ran said automobile against said plaintiff, and that the negligence of said defendant was the proximate and direct cause of the accident."

Respondent and Mrs. Jackman testified they did not hear the horn, and neither appellant nor Furlott gave any testimony on the subject. Therefore, the finding that appellant failed to sound the horn must be sustained. Appellant relies, however, on the provisions of the Motor Vehicle Act [Stats. 1915, p. 405], and contends that: "Every auto must be equipped with a horn and the person operating it shall sound the horn whenever necessary as a warning of danger but not at any other time nor for any other purpose," and insists it was not necessary to blow the horn in this instance. The statute provided the horn should be sounded "whenever necessary." Appellant testified his headlights were burning brightly; that he saw respondent as soon as he passed the street-car, while she was still walking across the street and before she stooped down. Keeping in view, also, the condition of the night, there was evidence from which it could be determined whether it was or was not necessary to sound the horn, and the court impliedly found the necessity existed.

[3] Appellant also insists there was no negligence in the use of the brake. He testified on this subject to the effect that he was driving carefully around the street-car; that about a third of a block away he saw respondent; that "when you see people crossing the street you figure on them going

across, but here she stopped and stooped over facing west. At that time I jammed on the brakes and tried to turn to the side.'' On cross-examination he testified: ''Q. Did you put on the brake when you first saw her? A. No, sir. Not until I saw her stoop over. Q. Not until you saw her stoop over? A. No, sir. There was no need. Q. Answer the question yes or no. A. I don't know that I did—I did not. I had one foot on the clutch and one on the brake. As near as I can remember I did not put on the brake until I saw that we were going to run into her.'' The finding, as we have seen, was that he negligently failed to use the brakes. Appellant admitted he did not put on the brakes until he saw respondent stoop over, and that he ''jammed on'' the brakes, causing the car to skid. Since he carelessly failed to sound the horn, the court might have concluded that there was all the more reason for using the brakes sooner than he did, and, hence, it cannot be said that the finding is not supported by the evidence.

Appellant objects to the finding that he failed to have proper equipment, for the reasons that it is not specified what equipment was omitted, and that his testimony showed the automobile was equipped with headlights, chains on the rear wheels and with a brake. He also asserts opposing witnesses merely testified they did not see any chains on the wheels either at the place of the accident or at the hospital, and that there was no testimony that the absence of chains caused the skidding. However, Mrs. Jackman and Harry A. Davis, the conductor on the street-car, testified positively there were no chains on the rear wheels. We are of the opinion that the finding was sufficiently specific. As to the evidence, there is a direct conflict as to whether there were chains on the rear wheels; it is not claimed there were any on the front wheels. Considering all the evidence on this point, it was sufficient to justify the finding that appellant ''failed to have proper equipment of said automobile at said time.''

Appellant next urges that:

''II. The plaintiff herself was negligent and her negligence contributed to the accident, and was the proximate cause of the accident and of her injuries resulting therefrom.''

This contention is based on the conduct of respondent in stopping in the middle of a heavily traveled street without any light, in being at a place which was not a street crossing, where pedestrians would not be expected to be, and in failing to keep a lookout for traffic.

[4] The court found "That it is not true that any carelessness or negligence or recklessness of plaintiff contributed to the damage which said plaintiff sustained by reason of said collision," or that the "injuries suffered by plaintiff were directly or proximately caused by the negligence or carelessness or recklessness of the said plaintiff herself." Respondent testified that before leaving the curb she looked up and down the street; that she looked again when she got to the car track, and that before stooping over to pick up the article she looked both ways, but failed to see the machine because the Echo Park Avenue car obstructed her view. She testified: "I had just stooped over picking up the article when Mrs. Jackman yelled, 'Look out for the car,' and the car swerved around the end of the street-car." The conductor estimated the distance from the end of the street-car to the point where respondent was struck at from sixty to seventy feet. We cannot say from this evidence, considered with the other evidence in the case, that the findings on this subject are without support, or that as a matter of law respondent, by want of ordinary care, brought the injury upon herself.

The parties have cited a number of authorities, but it would serve no purpose to discuss them, for the reasons that there is no question as to the law involved, and that on their facts they would not aid us in determining whether appellant acted negligently or respondent contributed to her injuries.

Judgment affirmed.

Shaw, J., and Shurtleff, J., concurred.