[Civ. No. 6257. First Appellate District, Division One.—December 13, 1928.]

BEN GREGORIEV, Respondent, v. NORTHWESTERN PACIFIC RAILROAD COMPANY (a Corporation), Appellant.

Goodfellow, Eells & Orrick, R. W. Palmer, Stanley Moore and Geary & Geary for Appellant.

Hilliard Comstock and Bell & Simmons for Respondent.

KNIGHT, J.—Respondent's sedan automobile was struck and demolished by one of the appellant's trains on June 18, 1925, at a grade crossing between Guerneville and Rionido station, Sonoma County, and as a result of the collision respondent, who was driving the sedan at the time, sustained an injured skull, his wife was killed and his two daughters and a son, aged twelve, eleven, and six years, respectively, who were the other occupants of the machine, were more or less injured, one of his daughters having suffered a fractured spine. Thereafter respondent commenced this action for damages and upon trial before a jury was awarded a verdict,

the amount of which was reduced by the trial court on motion for a new trial, to which reduction respondent consented; whereupon judgment for the reduced amount was entered in respondent's favor, from which judgment the Railroad Company has appealed.

The complaint alleged and evidence on behalf of respondent was adduced at the trial to prove that the collision was proximately caused by the Railroad Company's failure to maintain said crossing in a safe condition, and by the negligent operation of its train thereover. Appellant makes no point on this appeal as to the sufficiency of the evidence relating to either of the foregoing issues, but contends that respondent took no precautions whatever to observe the approach of trains before attempting to cross the track and therefore was shown to be guilty of contributory negligence as a matter of law.

It is doubtless a well-settled principle of law that a person approaching a railroad crossing is bound to stop and look and listen for approaching trains, because, as has been frequently stated, the track of a steam train is in itself a warning of danger and a person about to cross the same must take precautions for his own safety (*Herbert* v. *Southern Pac. Co.*, 121 Cal. 227 [53 Pac. 651]; *Loftus* v. *Pacific Electric Ry. Co.*, 166 Cal. 464 [137 Pac. 34]); but the courts have also declared that this conceded rule is grounded upon the assumption that such person knew or should in reason have known that he was approaching a railroad crossing (*Lawrence* v. *Southern Pac. Co.*, 189 Cal. 434 [208 Pac. 966]; *McClure* v. *Southern Pac. Co.*, 41 Cal. App. 652 [183 Pac. 248]); in other words, as stated in the latter case, "it cannot be said as a matter of law that a stranger traveling upon a highway over which, unknown to him, a railway track crosses, is, by reason of his failure to stop and look and listen, guilty of negligence, where such track is obscured and there is nothing to indicate its presence or warn him of its existence." (See, also, *Rosenbloom* v. *Southern Pac. Co.*, 59 Cal. App. 109 [210 Pac. 53].)

The evidence here shows that respondent did not stop before attempting to cross the track, but it further shows without conflict that he was a total stranger to the regions where the accident occurred; and testimony was introduced which reasonably supports the inference that he was in fact

unaware of the existence of the railroad crossing until he was too close to it to avoid being struck by the train. Indeed, appellant does not question the truth of such testimony, its position being, as stated in its brief, that it ''may be true that plaintiff did not see the crossing, but,'' appellant asserts, ''it cannot be said in the face of the record here that he could not have seen the same had he exercised any degree of care and caution.''

The jury concluded, however, after hearing and considering all of the circumstances attending the accident, especially those relating to the physical conditions present at the scene thereof, that respondent's failure to observe the railroad track was not due to a lack of exercise of ordinary care on his part, and in our opinion the evidence is legally sufficient to support such conclusion.

The essential features of the evidence sustaining this view are as follows: Respondent, a resident of Contra Costa and Alameda Counties for upward of fifteen years, was on his way to Fort Ross, Sonoma County, but was intending to spend the night at a camp on the Russian River between Guerneville and Rionido, owned by a Mr. Coon. Accompanying respondent on the trip, besides the members of his family, but traveling in a separate automobile, were two others named Tsaregradsky and Sakovich. They had stopped at this particular camp the year before, and were driving a short distance ahead of respondent to show him the way. They proceeded along the main county highway out of Guerneville for some distance and then turned into Bonita Avenue, which led through Coon's property and to the camp-grounds, and was the road on which the accident happened. Bonita Avenue extended at right angles from the Guerneville highway southerly in a straight line for about 230 feet and then crossed the railroad track squarely and continued on down into the Coon property. It was a narrow road having a traveled bed of only seven feet in width which lay in the center of a right of way sixteen and one-half feet wide. It had been constructed many years before, and originally was a private road, but long prior to the accident had been laid out and dedicated to the public on a recorded map of a subdivision of land and formally accepted by the county, after which the road was maintained by the county and traveled generally by the public, and was the only road

leading to Coon's camp-grounds. The Railroad Company maintained no crossing signs along Bonita Avenue nor on its right of way to call attention to the existence of the railroad crossing, nor were cattle-guards constructed at the crossing which might have indicated the presence of a railroad track. Neither was any kind of crossing signal operated at that point to give warning of the approach of trains, nor was any whistling-post erected on the railroad right of way requiring engine crews to sound warning of the approach of trains and evidence was adduced to prove that this particular train sounded no warning of any kind until instantly before the crash.

The automobile driven by Tsaregradsky and his companion was a delivery type Ford with a box back and a top. The road was dusty and the automobiles were traveling approximately nine miles an hour. The evidence fails to show with any degree of certainty how close behind the Ford respondent traveled down Bonita Avenue, various witnesses having fixed the distance from sixty-five to one hundred feet. But just before respondent's sedan reached the track the occupants of the Ford, having already crossed the track, suddenly saw the train approaching from the east, traveling, as the engineer afterward testified, at a speed of thirty-five miles an hour. Tsaregradsky at once waved his hand through the broken window in the rear of the Ford top in an effort to warn respondent of the impending danger, but respondent did not understand the meaning of the signal. Immediately thereafter, however, he heard and saw the train, and instantly applied his brakes and turned quickly to the right in an effort to avoid being struck, but the projecting cross timber on the front of the locomotive caught the front end of the sedan, hurled it around, and it was crushed between the side of the locomotive and a large redwood stump standing in the railroad right of way a few feet from the track, with the result already described.

The physical conditions present, other than those mentioned, which respondent claims and the jury found obstructed the view of the railroad and obscured the crossing, were shown to be substantially as follows: Extending along both sides of Bonita Avenue from the Guerneville highway to the railroad crossing was an apple orchard which grew close to, and some of the tree branches extended for a

considerable distance over the fence on each side of, the right of way. The trees were fully matured, being eight or nine feet high, in good condition, and at this particular season of the year were dense with foliage; and standing among the trees, close to the right of way on the easterly side, were several large redwood stumps, and along and within both rights of way there was a considerable growth of weeds and wormwood brush, which along the fences grew fence high. Where the roadbed crossed the track the Railroad Company had laid planking between the rails flush therewith and with the grade of Bonita Avenue, but more or less grass was growing between the planking and the rails, and between the ties; and dirt and gravel had been tracked upon and across the planks by the county road crew in scraping and grading the approaches to the railroad crossing shortly prior to the accident. In connection with the foregoing physical conditions testimony was introduced to the effect that because of them the railroad right of way on both sides of the crossing could not be readily seen, and that the crossing itself was not plainly discernible to persons traveling from the Guerneville highway down to Bonita Avenue toward said crossing.

Such being the facts and circumstances, we are not prepared to hold as a matter of law, contrary to the finding of the jury, that a reasonably prudent person, situated as respondent was, would have observed said crossing in time to have averted a collision. As often said, rarely is a set of circumstances presented which enables a court to say, as a matter of law, that negligence has been shown. It is usually a question of fact for the jury, an inference to be deduced from the circumstances of each particular case (*Gregg* v. *Western Pacific R. R. Co.,* 193 Cal. 212 [223 Pac. 553]; *Seller* v. *Market Street Ry. Co.,* 139 Cal. 268 [72 Pac. 1006]). Even where there is no conflict in the evidence, if different conclusions upon the subject can be rationally drawn therefrom the jury's determination is controlling. If only one conclusion is reasonably deducible from the evidence, then, of course, it becomes a question of law for the court, "but if one sensible and impartial man might decide that the plaintiff had exercised ordinary care, and another equally sensible and impartial man that he had not exercised such care, it must be left to the jury" (*Herbert* v. *Southern*

*Pac. Co., supra; Hoff* v. *Los Angeles Pacific Co.,* 158 Cal. 596 [112 Pac. 53]). Therefore, it is only where no fact is left in doubt, and no deduction or influence other than negligence can be drawn by the jury from the evidence, that the court can say, as a matter of law, that contributory negligence is established; and even where the facts are undisputed, if reasonable minds might draw different conclusions upon the question of negligence, the question is one of fact for the jury (*Johnson* v. *Southern Pac. R. R. Co.,* 154 Cal. 285 [97 Pac. 520]; *Zibbell* v. *Southern Pac. Co.,* 160 Cal. 237 [116 Pac. 513]; *Seller* v. *Market Street R. R. Co., supra*). At most, the evidence here is such that reasonable minds might draw different conclusions therefrom, and that being so, on appeal, the jury's determination cannot be set aside. (*Rosenbloom* v. *Southern Pac. R. R. Co., supra; Zibbell* v. *Southern Pac. Co., supra; Alloggi* v. *Southern Pac. Co.,* 37 Cal. App. 72 [173 Pac. 1117]; *Wing* v. *Western Pac. R. R. Co.,* 41 Cal. App. 251 [182 Pac. 969]; *Lawrence* v. *Southern Pac. Co., supra.*)

■ Appellant introduced in evidence a photograph of the railroad crossing taken from Bonita Avenue at a point about seventy-five feet northerly of the crossing, which it claims constitutes "the most important piece of evidence covering this feature of the case, and settles without conflict the question of whether or not the rails were obscured." A similar contention was made with reference to a like photograph in the case of *Vaca* v. *Southern Pac. Co.,* 91 Cal. App. 470 [267 Pac. 346], but was disposed of adversely in the following language: "The value . . . of a photograph as evidence is not for this court to determine, for, as was said in *People* v. *Crandall,* 125 Cal. 129, 133 [57 Pac. 785] : 'We may assume that everyone now understands the limitations upon the use of the photograph. It presents but one point of view, and may sometimes make an unfair representation of the point at issue. Like any other diagram, its value must be determined by the jury from all the evidence.' " ■ Much reliance is also placed upon the fact that the Railroad Company had built a wooden gate along the northerly side of its right of way to extend across Bonita Avenue, and that on one side of the top board had painted a sign reading, "Keep This Gate Closed," and on the board next below had painted a smaller sign reading, "Private Crossing." But in this

connection the evidence reveals that for a long time prior to the accident and on the day thereof this gate, on account of being out of repair, was allowed to remain open, having been swung toward the railroad track so as to form a continuation in a straight line of the easterly right of way fence of Bonita Avenue, and that as a consequence the signs were not plainly visible to persons traveling southerly along Bonita Avenue; moreover, even though the signs were visible, there was nothing in the wording of them indicating the presence of a railroad crossing; and, as respondent explained, when he saw the machine ahead pass through the open gateway without stopping and proceed toward the house beyond he believed the gateway simply marked the entrance to the camp-ground. Under the circumstances stated it cannot be fairly held as a matter of law that the presence of the gate under the conditions above described was sufficient in itself to warn respondent of the existence of the railroad crossing.

Other evidence was introduced by appellant to prove that, after having entered the railroad right of way, a person was able to see approaching trains for a considerable distance down the track, but the testimony on this point was conflicting, other evidence having been adduced to show that the view was more or less obstructed by the wooden gate and by a growth of suckers approximately seven feet high which had sprouted from the stumps of the apple trees standing within the railroad right of way. In any event, the matters above referred to only added to the conflict already existing upon the question of whether respondent, as an ordinarily prudent man, should have observed the crossing, and are not sufficient of themselves to nullify the finding of the jury on that issue.

Appellant assigns as error a ruling made during the cross-examination of Mr. Coon admitting in evidence over appellant's objection a letter dated July 26, 1922, written by Coon to the Railroad Company, which read as follows: "Would like very much to get a crossing sign placed at North side of Track on Bonita avenue, El Bonita Ranch, between Guerneville and Rionido. The crossing is being used more now than before, and believe for 'Safety First' would be the thing to do. Will be more than pleased to assist in any way for the general good of all." The

letter was admitted as impeachment evidence and we think the ruling proper. Mr. Coon was called as a witness for appellant and in part testified as follows: "Q. A person driving in an automobile turning into that roadway off the Guerneville-Rionido Highway could see at all times as they proceeded toward the railroad tracks the railroad crossing across the roadway? A. I think they could. . . . Q. Would you say, looking down that road, based upon your experience, all the time you used it, there was no obstruction between the rails and the county highway? A. Not to my knowledge. . . . Q. You say the view was quite open there, Mr. Coon? A. The view of the crossing? Q. Yes. A. It was." The clear impression created by the foregoing testimony and more to the same effect was that at the time of the accident the railroad crossing was open and visible at all times to persons traveling south on Bonita Avenue, and consequently was safe without the maintenance of a crossing sign thereat; whereas the plain effect of the letter, which apparently was written and sent for the sole purpose of having a crossing sign erected at that point, was that without such sign the crossing was not safe. A substantial inconsistency appears, therefore, between the testimony of the witness and the statements made in said letter, which in our opinion justified the admission of the letter in evidence. (*Hanton* v. *Pacific Electric Ry. Co.,* 178 Cal. 616 [174 Pac. 61]; *Worley* v. *Spreckels Bros.* Co., 163 Cal. 60 [124 Pac. 697].) In the former case the court held that it was not necessary that there should be contrariety in terms between the testimony given and the asserted impeaching statement, but was only necessary in order to render it admissible that the statement should have a tendency to contradict or disprove the testimony or any inference to be deduced from it. And in *Worley* v. *Spreckels Bros. Co., supra,* the court quoted approvingly the following rule from Wigmore on Evidence (vol. 2, sec. 1040): "As a general principle it is to be understood that this inconsistency is to be determined, not by individual words or phrases alone, but by the whole *impression or effect* of what has been said or done. On a comparison of the two utterances are they in effect inconsistent? Do the two expressions appear to have been produced by inconsistent belief?" One of the cases cited by the author in support of the foregoing text is *Foster* v.

*Worthing,* 146 Mass. 607 [16 N. E. 572], which seems particularly pertinent here. It is there said: ''It is not necessary, in order to make the letter pertinent, that there should be a contradiction in plain terms. It is enough if the letter, taken as a whole, either by what it says, or by what it omits to say, affords some presumption that the fact was different from his testimony. And in determining this question much must be left to the discretion of the presiding judge.'' The rule stated in Cyc. is to the effect that there need be no direct contradiction between the two statements if they differ in any material particular, and that accordingly, ''if there is an inconsistency between the belief of the witness as to certain matters as indicated by his previous declarations, and that which would naturally be indicated by his testimony, such prior declaration may be shown, although not directly contradictory of any specific statement made on his examination . . . '' (40 Cyc., p. 2701). It may be conceded that a somewhat narrower rule was declared in *People* v. *Collum,* 122 Cal. 186 [54 Pac. 589], upon which appellant seems to rely, but the rule as there stated was in effect disapproved in *Worley* v. *Spreckels Bros. Co., supra,* in the following language: ''We are aware that there are some expressions in the opinion in *People* v. *Collum,* 122 Cal. 186 [54 Pac. 589], that may appear inconsistent with our ruling on this question. In so far as that opinion may be construed as holding that notwithstanding the natural effect and impression of the inconsistencies, nevertheless if both statements (the one on the trial and the prior statement) may be literally true on some conceivable hypothesis, the prior statement may not be shown, we think it goes too far and does not state the correct rule.'' Appellant claims also that the letter was admissible because subsequent to its date and prior to the accident the Railroad Company removed some of the obstructions near the scene of the crossing, and thus avoided the necessity of erecting a crossing sign. But there is a conflict in the evidence as to the effect of the removal of said obstructions, and aside from such conflict, the point mentioned would have relation only to the weight which should be given to the letter as impeachment evidence and would not affect its admissibility.

█ Appellant further complains that although the letter was admitted for the purpose of impeachment, respondent

afterward wrongfully used it in his argument in an effort to persuade the jury that the Railroad Company had negligently failed to erect a crossing sign after having been warned of the increased travel on Bonita Avenue. Even though such use of the letter was improper, the impropriety would not call for a reversal of the judgment because, when put to such use, the letter only added another circumstance to the already existing conflict bearing upon the question of the negligent maintenance of the crossing, and appellant makes no contention on this appeal that, aside from the contents of said letter, the evidence is insufficient to support the finding of the jury on that issue.

The court instructed the jury in part as follows: "In civil cases the affirmative of the issue must be proven. In this case the affirmative rests upon the plaintiff, and he must establish every material allegation of his complaint by a preponderance of the evidence, except as to the question of contributory negligence on the part of plaintiff, which must be proven by the defendant railroad, unless the evidence of plaintiff affirmatively shows such contributory negligence. Preponderance means, not the greater number of witnesses, but the greater weight of evidence. You are not compelled to decide in accordance with the testimony of any number of witnesses unless their evidence carries conviction to your minds. The direct evidence of a single witness, who is entitled to full credit or legal presumptions which may apply or any other competent evidence which is adduced, may be convincing or satisfactory to you as to the truth of the particular issue. *Evidence is satisfactory which ordinarily produces moral certainty or conviction in an unprejudiced mind; such evidence alone will justify a verdict.* It is unnecessary for your minds to be free from all doubt. It is your duty to decide in favor of the party on whose side the weight of evidence preponderates, and according to the reasonable weight and effect of the evidence adduced." (Italics ours.)

Appellant contends that the instruction as given violated the fundamental principle that the affirmative of the issue in civil cases shall be established by a "preponderance of the evidence" and gave to the jury an erroneous definition of that term, citing *People* v. *Miller,* 171 Cal. 649

[154 Pac. 468], and *Estate of Ross,* 179 Cal. 629 [178 Pac. 510].

The italicized portion of the instruction is doubtless a restatement in exact language of the definition of "satisfactory evidence" set forth in section 1835 of the Code of Civil Procedure which was repealed in 1923, apparently for the purpose of preventing continual confusion of the definition of satisfactory evidence with that of the preponderance of evidence. For that reason it would seem that the italicized portion of said instruction should have been omitted. But, as will be observed, preceding and following the italicized portion defining satisfactory evidence, the jury was fully and correctly instructed upon the subject of preponderance of evidence and was given a correct definition of that term. Therefore, as held in the cases hereinafter cited, the insertion of the matter relating to satisfactory evidence does not constitute reversible error. (*Boa* v. *San Francisco etc. Terminal Ry. Co.,* 182 Cal. 93 [187 Pac. 2]; *Lawrence* v. *Goodwill,* 44 Cal. App. 440 [186 Pac. 781]; *Fidelity Co.* v. *Paraffine Paint Co.,* 188 Cal. 184 [204 Pac. 1076].) Besides, the jury was instructed that there "can be no recovery for damages for injuries sustained by a person who was struck by a railroad train at a grade crossing where a preponderance of the evidence shows that even though the train might have been moving at an excessive rate of speed without warning that the proximate cause of the accident was the negligence of the injured party in approaching such crossing without exercising the care and caution which the law requires"; and it was also instructed repeatedly, at appellant's request, that if it found that plaintiff was guilty of negligence "which contributed in any manner or even in the slightest degree directly or proximately to the injuries sustained by him" he could not recover and that the verdict should be in favor of the Railroad Company. It would seem, therefore, that the jury could not have been misled by the insertion of the former code definition of satisfactory evidence. As held in *Hayden* v. *Consolidated Min. Co.,* 3 Cal. App. 136 [84 Pac. 422], the charge must be viewed in the light of common understanding, and the practical administration of justice should not be defeated by a too rigid adherence to close or technical analysis of the whole or any part thereof; and if, by taking the charge by its four cor-

ners and placing a reasonable, unstrained construction on each of its several parts as viewed in the light of the general context and the relation of each part to the other, a man of ordinary intelligence reading the charge intended for his guidance would be able to ascertain its meaning as a whole, the instruction cannot be said to be misleading.

Moreover, even though it be assumed that the instruction be subject to the criticism appellant makes against it, the ill effect thereof doubtless operated more to the detriment of respondent than it did to appellant, because, if given the construction appellant contends for, it required respondent to establish his case of negligence against appellant by a greater degree of proof than the law demanded.

The instruction given in the present case is easily differentiated from those given in the cases cited and relied upon by appellant (*People* v. *Miller, supra,* and *Estate of Ross, supra*). In each of those cases, as will be noted by comparing the former code definition of satisfactory evidence with the objectionable instructions given in those cases, the trial court, in defining the term "preponderance of evidence," gave virtually the code definition of "satisfactory evidence"; and in neither case was any other instruction given upon the subject of preponderance of evidence. It is evident, therefore, that the juries in those cases must have been misled as to the law relating to the degree of evidence necessary to warrant a finding on the facts. Here, as pointed out, in the forepart of its instructions, as well as in the latter part thereof, the term "preponderance of evidence" was correctly defined, and the jury rightly instructed upon that subject. Therefore, under the authority of the cases hereinabove cited, even though it be deemed that the insertion of the former code definition of satisfactory evidence was improper, a reversal of the judgment on that ground is not warranted.

■■■ The court also gave certain instructions relating to the duty imposed upon a railroad company by the provisions of section 486 of the Civil Code to ring a locomotive bell and sound a whistle, a certain distance from the place where the railroad crosses "any street, road, or highway," etc. In this regard the court stated, among other things, that such requirement applied not only to crossings of "roads or highways which have been dedicated to the public, and are

regularly maintained as county roads, but applies to all public roads, upon which the public generally are entitled to travel''; furthermore, that ''wherever a road which crosses a railroad is apparently open to the public and is used by it with the assent and acquiescence of the railroad company, if you find such to be the facts, it is its duty to give signals for the benefit of travelers on the road when approaching such crossings; and that this is true whether or not the road has been legally established by dedication, prescription, or acquiescence.'' At appellant's request the jury was further instructed ''as a matter of law that the road way known . . . as Bonita Avenue was at the time of the accident . . . a private way *over and across the right of way of the Northwestern Pacific Railroad Company.*'' (Italics ours.) But the court refused to give another instruction proposed by appellant to the effect that Bonita Avenue was not a ''public highway'' and that consequently appellant was not compelled by said code section ''to give any warning of the approach of the train at a crossing of the character involved in this case.'' Appellant contends that the instructions as given were not only conflicting, but that the evidence shows that the Bonita Avenue crossing was merely a ''farm crossing'' and not a ''street, road or highway'' crossing within the meaning of the said code section; and that therefore no duty was imposed upon the Railroad Company under said section 486 to ring a bell or sound a whistle when approaching said crossing, and that the jury should have been so instructed. We find no merit in either contention. Summarizing the instructions, the plain meaning thereof was that even though Bonita Avenue was a private way ''over and across the right of way'' of the railroad, the company was nevertheless obliged to comply with the requirements of section 486 if the jury found that the crossing was open to and used generally by the public ''with the assent and acquiescence of the railroad company. . . . '' As thus interpreted the instructions appear to be in entire harmony with appellant's construction of said code section, as stated in its brief, for it is there said: ''The statute (Civ. Code, section 486) provides that the warnings be sounded at all streets, highways, or roads and does not specifically state that such streets, highways or roads be public thoroughfares. This statute has been construed in

this state in *Orcutt* v. *Pacific Coast Ry. Co.*, 85 Cal. 291 [24 Pac. 661], and *Vance* v. *Atchison, Topeka & Santa Fe Ry. Co.*, 9 Cal. App. 20 [98 Pac. 41], and both of these cases hold that, if the crossing is an open one and the road is one in general use by the public, the statutory warnings should be sounded, regardless of whether or not there had been a formal dedication of the road to public use.'' The evidence here establishes a legal dedication and acceptance of Bonita Avenue, and a constant use of it thereafter by the general public; and although there is no evidence to show that the Railroad Company expressly consented to such dedication and acceptance, it does appear without substantial conflict that since the acceptance of said road work has been done by Sonoma County along the entire length of it, including the portion which crosses the railroad right of way; also that the crossing was an open one because of the fact that for a long time prior to the accident appellant allowed its gate to fall into disrepair and to stand open continuously; that standard crossing planking was placed between the rails, and that appellant's train crews had knowledge of the increased use of the road by the general public, particularly during the summer months, at which time this accident occurred. Therefore, even assuming, as the court instructed at appellant's request, that the particular portion of Bonita Avenue where it crossed the railroad's right of way remained ''a private way,'' nevertheless, the evidence shows that the crossing was an open one and was being used generally by the public as part of a road dedicated to and accepted by the public; consequently, even under appellant's construction of the law, the status of the crossing has been brought within the provisions of said code section.

 The jury awarded damages in the sum of $25,000, but by court order, acquiesced in by respondent, the amount was reduced to $17,500; and appellant contends that even as reduced the amount is excessive. The evidence supports an allowance of approximately $7,000 for special damages, including destruction of property, medical and hospital expenses necessarily incurred up to the time of trial in the treatment of respondent and his family; loss of respondent's earnings up to the time of trial, and loss of services of his daughter, whose back was broken. This would leave $10,500 to be accounted for in general damages, which would in-

clude those necessarily flowing from respondent's personal injuries and the expenses to be incurred by him in providing necessary medical and surgical treatment, and hospitalization for his injured daughter.

With reference to respondent's injuries, the evidence shows that they were severe, painful, and some of them doubtless permanent. The outer shell of his skull, protecting the sinus, was punctured, the wound being three inches long on the surface and two inches long where the sinus was penetrated; and he suffered numerous lacerations about the forehead and face, some of which will leave permanent scars. The injury to the sinus developed a case of chronic sinusitis, causing dizziness, headaches, defective hearing, and a constant discharge through the nose. He also sustained a nervous shock which the testimony shows would prevent him for some time at least from following his trade as a shoemaker, out of which he had been making clear earnings of $300 a month for more than ten years. His daughter's injuries, it was shown, would necessarily require much expensive medical and surgical treatment and hospitalization. Her back was broken by being "jacknifed" or crushed forward, thereby also injuring certain internal organs and paralyzing one leg. Since the accident she had been compelled to wear a steel jacket to prevent further deformity and to allow the bones of the spine to "become solid," and her doctor testified that when the bones reach that stage certain operations would be necessary, the object being "to take out the gristle from between these bones and let the bones come together, and take a portion of the bone and strap them and lay them down close so they all become one solid mass, bridging the broken bone in the middle to the good bone above and the good bones below"; and that for at least two months following the operation the girl would be compelled to lie on her back in a specially arranged bed, with her body covered with a plaster cast extending from her chest to her hips, during which period she would require the attention of special nurses.

The rule is well settled that awards for personal injuries cannot be declared excessive, as a matter of law, merely because the amount may be larger than is ordinarily allowed in such cases (*James* v. *Oakland Traction Co.*, 10 Cal. App. 785 [103 Pac. 1082]). It is only when the

award is so grossly disproportionate as to shock the sense of justice and indicate that the award was the result of passion or prejudice that it may be set aside (*Averdieck* v. *Barris,* 63 Cal. App. 495 [218 Pac. 786] ; *Harrison* v. *Sutter St. Ry. Co.,* 116 Cal. 156 [47 Pac. 1019] ; *Martin* v. *Shea,* 182 Cal. 130 [187 Pac. 23] ; *Anstead* v. *Pacific Gas & Electric Co.,* 203 Cal. 634 [265 Pac. 487] ), and the only means of discovering the existence of passion or prejudice as influencing the award is by comparing the amount of the award with the evidence, the question being primarily one to be determined by the trial court (*Zibbell* v. *Southern Pacific Co., supra*).

After having heard all of the evidence relating to respondent's personal injuries and having had the opportunity to observe his physical and mental condition while testifying in court, and having also heard the evidence as to the future medical and surgical treatment required to be given respondent's injured daughter, the trial court reduced the amount awarded by the jury to such sum as it believed was fair and just; and in view of the facts above narrated we cannot say as a matter of law that the amount finally allowed is unwarranted and unreasonable.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard, in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 11, 1929.

All the Justices present concurred.