[Civ. No. 6078.   Third Appellate District.—August 31, 1939.]

DONALD HARPER et al., Appellants, v. NORTHWEST-ERN PACIFIC RAILROAD COMPANY (a Corporation) et al., Respondents.

Pillsbury, Madison & Sutro and Frank W. Finn for Appellants.

Geary & Geary and C. J. Tauzer for Respondents.

PULLEN, P. J.—An action was brought by the minor sons of John Fletcher Harper through their guardian, for the purpose of recovering damages for the death of their father, alleged to have been caused by the negligent operation of a train owned by the Northwestern Pacific Railroad Company, and operated by the other defendants as members of the train crew. At the conclusion of plaintiffs' case, a nonsuit as to all of the defendants was granted upon the ground that defendants were not negligent as a matter of law, and that the decedent was contributorily negligent. This appeal is from that order and judgment.

In accordance with the well-established rules that govern upon a motion for nonsuit that every favorable inference fairly deducible and every favorable presumption fairly arising from the evidence adduced must be considered as facts proved in favor of the plaintiffs, we glean these facts from the record:

Wilson Street is a paved public highway within the city limits of Petaluma, running in a general northerly and southerly direction. Crossing Wilson Street at right angles and on the same grade is a spur track maintained by defendant railroad company, running from the main line lying to the west of Wilson Street. A row of shade trees north of the spur extend along the west curb of Wilson Street. At the northwest corner of this intersection was the usual unlighted cross-arm railroad crossing sign. This sign, however, was, to a driver of a vehicle until he was within a few feet from the crossing, completely obscured by the trees. There were no lights or illuminated crossing signs, bells or wig-wags at the crossing, the nearest light being a 60 candle power street lamp on a pole 300 feet from the crossing. This crossing was presumptively in a 45-mile traffic zone.

Shortly after midnight of July 23, 1934, the defendants were operating a train consisting of a locomotive and two box cars, in an easterly direction upon the spur track west of Wilson Street. The engine was pushing the two cars and

was proceeding toward Wilson Street with the purpose of proceeding across that street to a box factory and there pick up other cars then waiting to be brought out to the main line. As the engine and cars left the main line onto the spur, the conductor in charge of the train preceded the cars afoot until he came to Wilson Street. He then took a position in the center of Wilson Street near the south rail, at which time the forward end of the train of cars was two or three car lengths west of the intersection, traveling about three or four miles an hour. At the time the conductor took up this position he saw, toward the north on Wilson Street, the lights of an automobile about 1500 to 1800 feet away. He saw nothing to the south of the track. When the box car passed the conductor as he stood in the center of Wilson Street, his view of the vehicle to the north was cut off. It was then still in apparently the same position as when he first saw it.

The train continued eastward until a coupling was made with the other cars at the box factory west of Wilson Street, during all of which time the conductor continued to stand in the center of the street, south of the crossing. When the coupling was completed, the trucks at the west end of the second car from the locomotive were directly opposite the center of the street. The locomotive did not come into the crossing, it being still west of Wilson Street when the train stopped. The entire width of the street, however, was blocked by the string of cars. From the time the conductor took up his position in the center of the street until the first of the box cars entered the intersection from one to two minutes had elapsed, and it was another thirty seconds to one minute after that until the coupling was completed.

The night was dark and the cars were a dark red in color. Both the conductor and the brakeman who was riding the ladder on the south side of the front car, carried electric lanterns. During all this time no whistle was sounded nor bell rung.

Shortly after the coupling had been completed and while the train was still stopped across Wilson Street, an automobile, driven in a southerly direction on Wilson Street collided with the north side of the second car from the engine at a point a little to the west of the center of the street, and almost directly opposite the conductor, who was on the other side of the car. No skid marks were found in the street by

the train crew. The father of plaintiffs herein was the driver of the car involved, and died from the effects of the accident.

It was upon these facts the trial court ordered the nonsuit from which this appeal is taken.

■ Plaintiffs first contend that defendants were negligent in that the defendant railroad company failed to comply with General Order No. 75–A of the railroad commission, which provides:

"Section V (b) of the General Order. Each crossing sign (Standard No. 1) herein illustrated shall be located in a conspicuous position facing highway travel, preferably at either corner of the crossing intersection on the right-hand side of the highway traffic flow and in advance of the railroad track."

It is also claimed that the crossing sign at Wilson Street was by reason of the presence of the trees, not in a conspicuous position, and could not be seen even on a bright sunny day.

It is next claimed that defendants failed to comply with section 486 of the Civil Code which requires that a bell on the locomotive be rung at a distance of at least eighty rods from the crossing, and kept ringing until it had crossed the street or highway, and for a failure so to do the corporation is liable for all damages sustained; and lastly, plaintiffs contend defendants negligently failed to comply with the standard of due care required under the circumstances, and that statutory regulations constitute only the minimum measure of care required in the operation of a dangerous instrumentality, such as a locomotive or train of cars, and it was for a jury to determine whether something more than the minimum of care was required under the circumstances here in evidence.

Plaintiffs urge that the night was dark and the crossing made more so by the trees and unlighted buildings in the immediate vicinity; that the cars were almost black, and the only warning light was that of the lantern of the conductor; that this conductor was negligent in that he took up his position in the center of Wilson Street to the south of the track, although at that time the only visible light was to the north thereof some 1500 or 1800 feet away, and he also knew his brakeman was riding not on the north but on the south side of the leading box car.

As was said in *Bush* v. *Southern Pac. Co.*, 106 Cal. App. 101 [289 Pac. 190], the better and almost universal rule is that a railroad company will not be held free from negligence even though it may have complied literally with various safety statutes, for neither the legislature nor the railroad commission can foresee in advance what would, under all circumstances, constitute ordinary care.

To overcome the charge that the evidence establishes that decedent was contributorily negligent, plaintiffs rely in part upon the presumption ''that a person takes ordinary care of his own concerns'' and ''that the law has been obeyed'', which presumptions are evidence until rebutted. (*Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 Pac. 529].)

Nor can it be said that the failure to see an unlighted object within the range of one's headlights is negligence *per se*. (*Scoville* v. *Keglor*, 27 Cal. App. (2d) 17 [80 Pac. (2d) 162].) Under such circumstances it was held to be a question for the jury.

Respondents cite many cases to the effect that the railroad corporation was lawfully occupying the crossing in the conduct of its business, and that the presence of a train across an intersection is of itself sufficient warning of danger.

The right of the railroad company to occupy the street is conceded, but for the presence of a car across a highway to constitute notice of such an obstruction, we must presuppose that its presence could have been known to or anticipated by a person of reasonable prudence.

''It is true that a visible railroad track is itself a warning of danger. But it is equally true that a railroad track which is invisible on account of darkness or because it is otherwise concealed from view, is not a warning of danger, unless one knows just where to look for it. It is only when one observes, or by the exercise of reasonable care should have observed, a railroad track, or when one knows that it is in a particular place and identifies the locality, that it becomes a warning of danger. Under the circumstances of this case, it may well be said in the language of the court in the case of *Gregoriev* v. *Northwestern Pac. R. R. Co.*, 95 Cal. App. 428, 433 [273 Pac. 76, 78] : 'Considering all of the circumstances attending the accident, especially those relating to the physical conditions present at the scene thereof, that respondent's failure to observe the railroad track was not due to a

lack of exercise of ordinary care on his part.' '' (*Hofstedt* v. *Southern Pac. Co.,* (Cal. App.) [1 Pac. (2d) 470].)

Here was not the situation of a moving car upon a crossing or standing upon an open lighted street, or where the existence of the spur was known to the deceased. The car was motionless and was no different than any other obstruction in the center of a dark street.

Defendants cite many cases from other jurisdictions which, upon examination are found to differ materially as to the facts, or were based upon rulings on a new trial, or affirmance of a judgment in favor of the defense, or from jurisdictions where the requirements of a nonsuit are not similar to our state. They also rely upon *Dunlap* v. *Pacific Elec. Ry. Co.,* 12 Cal. App. (2d) 473 [55 Pac. (2d) 894]. There a bell was rung and whistle blown and a wig-wag was in operation, and the train moving, none of which elements were here present.

It is here claimed that crossing signals are intended only to protect travelers against approaching trains and not against trains that have already reached the crossing, upon the theory that then the train itself is sufficient warning; but here where the presence of the spur itself was unknown to the driver of the car, a white cross-arm might have been seen where a dark box car would not, and in regard to the ringing of the bell, the section itself requires that it shall be kept ringing until the engine shall have crossed the street or highway. Admittedly that was not done here, as at the time of the collision the engine had not yet crossed the street and the bell was not ringing.

We believe it was error to grant a nonsuit under the conditions here existing, and the order and judgment must be reversed. It is so ordered.

Thompson, J., and Tuttle, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 30, 1939.