[Civ. No. 4232. First Appellate District, Division Two.—September 12, 1922.]

## LOUYRE ROSENBLOOM, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

[1] NEGLIGENCE—DEATH OF MINOR—LEGAL CAPACITY OF MOTHER TO SUE —PLEADING.—In an action by a mother to recover damages for the death of her minor child, the objection that the complaint does not state facts sufficient to constitute a cause of action because of the failure to allege that the plaintiff's husband is dead or that he has deserted her, to conform to the requirements of section 376 of the Code of Civil Procedure, goes to the legal capacity of the plaintiff to maintain the action, which must be taken by demurrer or by answer, and if not so taken, the objection must be deemed to have been waived.

[2] ID.—VERDICT NOT EXCESSIVE.—In this action by a mother to recover damages for the death of her minor child of the age of about

---

2. Excessiveness or inadequacy of damages for personal injuries resulting in death, notes, 12 Am. St. Rep. 375; 18 Ann. Cas. 1209; Ann. Cas. 1915C, 449; L. R. A. 1916C, 820.

two years, the verdict of five thousand dollars is not such as to suggest at first blush passion, prejudice, or corruption on the part of the jury.

[3] ID.—EMPLOYMENT OF MARRIED WOMAN — CARE OF MINOR — DEATH FROM ACT OF HUSBAND—NEGLIGENCE NOT IMPUTABLE TO MOTHER.— Where the mother of a minor employed a married woman to board and care for the minor and paid her for such service and the minor was killed in a collision between a train and an automobile in which the minor was riding and which was driven by the husband of such married woman, the negligence of the husband in the operation of the automobile cannot be imputed to the mother of the minor on the theory that the husband as well as the wife was the agent in charge of the child because of his community interest in the amount paid for the service.

[4] HUSBAND AND WIFE — COMMUNITY AGENCY OF WIFE — BURDEN OF PROOF.—The question of whether or not, in a given transaction, a married person contracts as an individual or as agent for the community, is a matter of proof, and one who sets up the community agency has the burden of establishing such fact.

[5] ID.—COLLISION OF AUTOMOBILE WITH TRAIN—NEGLIGENCE OF DRIVER —EVIDENCE—QUESTION FOR JURY.—In an action for damages for death resulting from a collision between an automobile in which the deceased was riding and a railroad train, the question of the negligence of the driver of the automobile was properly left to the jury, where it appeared from the evidence that he crossed the main tracks in safety and his machine was struck by a backing train on a spur-track, of which latter track it was not shown that he had knowledge of its existence and there was shown to be no light or signal on the train as required by a city ordinance.

APPEAL from a judgment of the Superior Court of Los Angeles County. Louis W. Myers, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. I. Gilbert for Appellant.

R. A. Morton for Respondent.

LANGDON, P. J.—This is an appeal by the defendant, Southern Pacific Company, from a judgment against it for $5,000 in an action by plaintiff to recover damages because

5. Contributory negligence of a driver of an automobile at a railroad crossing, notes, Ann. Cas. 1913B, 680; Ann. Cas. 1915B, 767; Ann. Cas. 1916B, 166; 46 L. R. A. (N. S.) 702.

of the death of her minor child, alleged to have been caused by the negligence of said defendant.

A motion for nonsuit was granted as to the other defendant in the action, evidently upon the principle that the cause of action did not survive the death of Louis Stout.

[1] The appellant urges, first, that the complaint does not state facts sufficient to constitute a cause of action, in that there is no allegation that the plaintiff's husband is dead or that he has deserted her, to conform to the requirements of section 376 of the Code of Civil Procedure. This objection goes to the legal capacity of the plaintiff to maintain the action. The defendant and appellant failed to present this objection by demurrer or answer in the trial court. Legal incapacity of the plaintiff to sue is an objection to be presented by demurrer if the fact appears on the face of the complaint and by answer if it does not so appear (secs. 430 and 433, Code Civ. Proc.), and if such an objection is not taken either by demurrer or answer, it must be deemed to have been waived. (Sec. 434, Code Civ. Proc.; *Wedel* v. *Herman,* 59 Cal. 507, 516.) The objection that the plaintiff has not legal capacity to sue does not go to the jurisdiction of the court. (*Crittenden* v. *Superior Court,* 166 Cal. 340 [136 Pac. 287]; *Work* v. *Campbell,* 164 Cal. 343 [43 L. R. A. (N. S.) 581, 128 Pac. 943].) Furthermore, defendant and appellant failed to object to testimony of respondent as to her status, which testimony established her right to bring the action. She testified that she was a "widow." "A widow is a woman whose husband is dead and who has not married again." (Black's Law Dictionary.) A widow is defined to be an unmarried woman whose husband is dead; one who has lost her husband by death, and has not taken another. (Bouvier's Law Dictionary; *In re Ray's Estate,* 13 Misc. Rep. 480 [35 N. Y. Supp. 481, 484].)

[2] Appellant also urges that the verdict is excessive and was the result of passion and prejudice. While we do not think that this judgment is such as to suggest at first blush passion, prejudice, or corruption on the part of the jury (*Bond* v. *United Railroads,* 159 Cal. 270, 286 [Ann. Cas. 1912C, 50, 48 L. R. A. (N. S.) 687, 113 Pac. 366]), we are also of the opinion that this point, to be

available to appellant on appeal, should have been presented to the trial court upon the motion for a new trial. (*Clark* v. *Fitch,* 41 Cal. 472; *Hale* v. *San Bernardino Valley Traction Co.,* 156 Cal. 713 [106 Pac. 83].) Section 657 of the Code of Civil Procedure specifies "excessive damages appearing to have been given under the influence of passion or prejudice" as a separate and distinct ground for a new trial; but the record discloses that appellant made its motion for a new trial upon other grounds and did not present the question of excessive damages to the trial court. Under such circumstances, there is no order of the lower court upon this point which is subject to our review. The relative duties of the trial and appellate courts on the general question of the measure of damages are discussed at length in the case of *Bond* v. *United Railroads, supra.*

Appellant contends that the court erred in overruling appellant's motion for a nonsuit and its motion for a new trial. These objections involve the sufficiency of the evidence to support the verdict, and may be discussed together.

[3] In support of its position on these motions, appellant argues several matters, for a proper consideration of which a brief preliminary discussion of the facts is necessary. The plaintiff, a widow, was employed as a telegraph operator. At the time of the accident which resulted in the death of her child she had placed the child with Mrs. Dollie Stout, who was to care for him and furnish him board and lodging for the sum of five dollars a week. The child was a little over two years of age. On October 13, 1920, some time between 6 and 7 o'clock in the evening, Mrs. Stout, her husband, Louis E. Stout, and plaintiff's child were riding in a Ford laundry delivery wagon, driven by Louis E. Stout. A collision occurred between the Ford delivery wagon and a train of the Southern Pacific Company. Mr. and Mrs. Stout were killed instantly, and the child died the following day as a result of his injuries. Upon these facts, alone, it is contended that the negligence, if any, of Louis E. Stout, in the management and control of his automobile, is to be imputed to plaintiff. This is upon the theory that Mr. and Mrs. Stout were plaintiff's agents in charge of her child.

Plaintiff testified that she made arrangements with Mrs. Stout to care for her child and paid her for such service.

But it is contended that Louis E. Stout, the driver, was also the agent of plaintiff in the matter of the care of her child, merely from the fact that he was the husband of Dolly Stout, the woman to whom she had intrusted her child. Appellant takes this position because the amount paid for the board of the child became the community property of the Stouts. We agree with the respondent that it would be unprecedented to hold that an employer of a married woman enters into a relationship of principal and agent with her husband by virtue of his community interest in her earnings.

[4] The question of whether or not, in a given transaction, a married person contracts as an individual or as agent for the community is a matter of proof, and one who sets up the community agency has the burden of establishing the fact of agency. In the case of *Schwarze* v. *Mahoney*, 97 Cal. 131 [31 Pac. 908], it was said: "The right of a married woman to enter into any transaction with any other person which she might if unmarried (Civ. Code, sec. 158) gives to her a correlative right to enforce . . . any obligation which she may have received from such other person as the consideration for such transaction, and whenever, in a transaction with a married woman, another person has received from her any property or advantage for which he has given his obligation, the burden is upon him to show that the transaction was entered into by her as the agent of the community, and not for herself. . . . "

In the case of *Wagoner* v. *Silva*, 139 Cal. 563 [73 Pac. 433], it was held that the husband cannot be presumed to have been the agent of his wife from the mere fact of the marriage relation. In the present case, the jury has found, under the instructions given by the court, that Louis Stout was not the agent or servant of the plaintiff in caring for her child. Plaintiff, therefore, cannot be charged with the negligence, if any, of Louis Stout on the ground that he was her agent in charge of her child.

There is no proof in the record whatever as to any negligence on the part of Mrs. Stout. The only facts relating to her which appear in the record are that plaintiff engaged her to care for the child and that her body was removed from the wreckage. If the action had been brought

to recover damages for the death of Mrs. Stout, the doctrine contended for by appellant might have been applicable, for in such a case there would enter the rule that a wife in the care and control of her husband has imputed to her his negligence. (Basler v. Sacramento Gas & Elec. Co., 158 Cal. 514, 518 [Ann. Cas. 1912A, 642, 111 Pac. 530].) But in the present case the facts make such a rule inapplicable, for the plaintiff herein bears no relationship whatsoever to Louis Stout and any amount recovered by her would enrich, in no way, the estate of Louis Stout and thus violate the maxim that one may not profit by his own wrong. There is no reason, therefore, why the negligence, if any, of Louis Stout should be imputed to the plaintiff because of the fact that his wife was plaintiff's agent.

But despite what has been said the decisive question must be met: Was the negligence of Louis Stout the proximate cause of the death of plaintiff's child? For, of course, regardless of agency between Louis Stout and plaintiff, if the negligence of Louis Stout was the proximate cause of the accident, plaintiff cannot recover from the defendant Southern Pacific Company.

On this question the jury was properly instructed, but appellant's position is that the evidence demonstrates conclusively the negligence of Louis Stout as the proximate cause of the injury and that it should have been so declared as a matter of law and a verdict directed for the defendant.

With every intendment in the plaintiff's favor, let us examine the evidence. Between 6 and 7 o'clock in the evening Louis Stout, his wife, and plaintiff's child were traveling in a Ford automobile. They were driving south on Workman Street, near its intersection with Alhambra Avenue, in the city of Los Angeles. Workman Street runs north and south. It is crossed at right angles by Alhambra Avenue. There are two main line tracks on Alhambra Avenue. There is a spur-track about forty-six feet south of the main line tracks, which leads to the Southern Pacific shops. The spur-track branches from the main line one block east of Workman Street and crosses Workman Street about twenty feet south of the sidewalk. The track enters and leaves the crossing over a private right of way. There was a wig-wag signal north of the main line tracks and

about 120 feet north of the shop or spur-track. There was no warning signal at or near the shop-track. There is an arc-light at about the center of the main line crossing. A network of wires passes under the arc-light. At the southeast corner of the intersection there is a board fence about four 'feet high that parallels the shop-track east of Workman Street. Several trees stand between the board fence and a cottage on that corner. Between the curb and the shop-track a line of telephone poles extends from Workman Street to Sichel Street. The shop-track extends between the line of poles and the fence and trees. At the southwest corner, between the Alhambra Avenue curb and the shop-track, and extending from the Workman Street curb two or three feet into Workman Street, there is a culvert or excavation, about two feet below the street level.

The story of the accident may be related in the language of the witness, George C. Miller, produced on behalf of the plaintiff. He testified that he resided not far from the intersection crossing; that he had gone to the crossing with his infant daughter to watch the trains, and at the time of the collision and for some time prior thereto he was standing close to the electric signal on the north side of the main line tracks. He saw the train that later collided with Stout's automobile move east on the east-bound main track with an engine at the far end, then back down on the shop-track and stop about fifty feet east of the east line of Workman Street. At this time another train was operating on the shop-track about 300 feet west of Workman Street. When the collision train stopped just east of Workman Street Miller saw a brakeman with a lantern leave the end box-car and walk west across Workman Street to a point in the roadway about 170 feet west of the west line of Workman Street. The brakeman had not returned to Workman Street when the collision train backed across the intersection. When the train backed across Workman Street it carried no light on the rear end, nor was any brakeman or flagman at or near the crossing. The approaching train was difficult to see because the arc-light was shielded by a network of wires crossing the street just under it. The automobile passed Miller just as the train started to move. The automobile was proceeding slowly at about a fast walk, and did not increase its speed, but con-

tinued at an even speed down the right side of Workman Street until within about six feet of the shop-track, when a woman screamed, and the automobile turned suddenly to the right and went down into the culvert, out of which it bounced at an angle on to the first rail of the shop-track, where it was struck by the train and dragged down the track.

The witness testified, further, that he ran to the wreckage about fifty feet west of Workman Street and there met a brakeman with a lantern running toward the wreckage from the west. This testimony was corroborated in its essential details by other witnesses for the plaintiff.

There was received in evidence an ordinance of the city of Los Angeles, section 1 providing that from one hour after sunset to one hour before sunrise a train crossing a public highway shall have a light on the approaching end, or a flagman with a light shall precede the train, unless such crossing or track is protected by an interlocking device or apparatus. It was stipulated that on the day of the accident the sun set at 5:30 o'clock, and it was also stipulated that the shop-track and crossing were not protected by an interlocking device or apparatus.

It is contended by appellant that it was the duty of Stout to stop, look, and listen for the approaching train, because the record contains testimony that the approaching train could have been seen for a distance of over 100 feet. But the testimony is that the train started to back across Workman Street at about the time Stout reached or crossed the main line tracks, only a short distance away from the spur-track, and the testimony regarding the physical features of the landscape make the conclusion that it was somewhat difficult to see this train at that hour a reasonable one. Of course, if Stout knew of the existence of the spur-track at that point, it was his duty to look and listen, but there is no evidence that he knew of the existence of the spur-track. The evidence is that he proceeded slowly across the street and crossed the main tracks in safety. Conceding that the electric wig-wag signal north of the main line tracks was ringing, the testimony is that Stout proceeded cautiously to cross the main line tracks in response to such warning. After that there was nothing to warn him of the existence of the spur-track. It was only as he crossed the

main tracks, or after he crossed them, that the train on the spur-track started to move slowly backward, with no light and no signal. He had then but a short distance to travel to the point where he suddenly swerved his car to the right. The evidence is consistent with the view that he was alert in crossing the main tracks and after passing them naturally relaxed his vigilance because there was nothing to warn him of further danger, and that when the box-car loomed before him, moving directly across his path, without light or signal, he swung his car suddenly to the right to avoid a collision, but being unfamiliar with the physical features of the road, he drove into the culvert, from whence his car bounced to the track directly in front of the train.

[5] In view of this evidence and the possible deductions to be made from it, the matter of Stout's negligence was properly left to the jury. "It is only where no fact is left in doubt, and no deduction or inference other than negligence can be drawn by the jury from the evidence that the court can say, as a matter of law, that contributory negligence is established. Even where the facts are undisputed, if reasonable minds might draw different conclusions from the question of negligence, the question is one of fact for the jury." (*Zibbell* v. *Southern Pac. Co.*, 160 Cal., at p. 241 [116 Pac. 515].)

In the present case, as in the case last cited, there was nothing to call attention to the existence of a spur-track, and the two cases have other features in common.

In the case of *Alloggi* v. *Southern Pac. Co.*, 37 Cal. App. 72 [173 Pac. 1117], a train of cars was backed along a spur-track over a highway crossing, at night. No brakeman was present at the crossing or on the train and there was a conflict of evidence as to the visibility of the approaching train. The court said: "The evidence was, therefore, susceptible of the construction, as the jury evidently found, that the defendants were guilty of negligence in shunting cars over a crossing used by the public, at night, without lights and attendants upon them, and without warning. . . . And if, as there is some evidence to show, the cars were standing still and disconnected, assuming that there was sufficient light to have seen them, it does not follow that the plaintiff should be required to conjecture or surmise that the cars might suddenly be shunted backward without

notice. . . . The court did not err in refusing to instruct the jury that it was the duty of plaintiff to stop, look, and listen at the most advantageous place. He was not required to look at the most advantageous place for this would be putting on him the burden of not only knowing the most advantageous place, but also of exercising the highest degree of care, while all that was required of him was ordinary care.''

The case of *Wing* v. *Western Pacific R. R. Co.*, 41 Cal. App. 251 [182 Pac. 969], is also in point here. In that case the plaintiff had crossed the two main tracks of a highway crossing and was struck by a train backing along a spur-track that branched from the main track and ran up over a sidewalk near the point of the accident. Plaintiff had a clear view of the spur-track in both directions for some distance. There was no light on the approaching car. It was pointed out that had the accident occurred on either of the main line tracks the motion for nonsuit would have been properly granted, but the condition and position of the spur-track, and the fact that the car that struck plaintiff was being backed upon the track without lights or warning, were elements which might cause reasonable minds to differ as to plaintiff's negligence.

The case of *Lawrence* v. *Southern Pac. Co.*, 189 Cal. 434 [208 Pac. 966], is the latest expression of our supreme court upon this question and is in point here. That court said: ''In the presence of such evidence, this court is unable to say as a matter of fact that the decedent knew or should in reason have known of the existence of this crossing or of the approach of this train so as to have been bound to stop and look and listen before essaying this crossing, and hence we cannot say that as a matter of law the decedent was guilty of contributory negligence in failing so to do. Under such conditions the question of contributory negligence would be one to be submitted to the jury under proper instructions of the court.''

In the present case we think the question of the negligence of defendant was properly submitted to the jury and its verdict thereon is conclusive upon this court.

The judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 10, 1922, and the following opinion then rendered thereon:

THE COURT.—The petition for a rehearing in the above-entitled cause in this court is denied.

We desire to withdraw ·from the opinion that part thereof which holds that the objection that the verdict was excessive was the result of passion and prejudice is not available on appeal unless it has been presented to the court below on a motion for new trial. The verdict in this case was not subject to that objection and it is sufficiently disposed of by the statement in the opinion that it is not such as to suggest, at .first ·blush, passion, prejudice, or corruption on the part of the jury.

The passage in the opinion which states that ''if the negligence of Louis Stout was the proximate cause of the accident, plaintiff cannot recover from the defendant Southern Pacific Company,'' was not necessary to the opinion.

Shaw, C. J., Wilbur, J., Lennon, J., Lawlor, J., Richards, J., *pro tem.*, and Waste, J., concurred.