Ex parte Herminia Tormes García, Petitioner and Appellant, *v.* Francisca Lanausse et al., Respondents and Appellees.

No. 7556.   Argued May 11, 1938.—Decided July 6, 1938.

*C. Domínguez Rubio* for appellant.   *José C. Aponte* for appellees.

Mr. Justice Travieso delivered the opinion of the court.

The facts in the present case, as the same appear from a stipulation signed by the parties, are as follows:

"1. That Herminia Tormes García and Leopoldo Lanausse were married in Salinas on November 26, 1913.

"2. That a son named Carlos Servando Lanausse, who predeceased his father, was born out of this marriage.

"3. That Herminia Tormes García brought suit for divorce against her husband, the said Leopoldo Lanausse on the ground of desertion, and a decree was entered on December 21, 1937, in favor of the petitioner herein who was granted the custody and *patria potestas* over her minor son, and that the divorce decree became final (*firme*).

"4. That said Herminia Tormes García married Guillermo Beau-champ in Ponce, P. R., on October 30, 1930, and that the said marriage is now in full force and effect.

"5. That Leopoldo Lanausse died in San Juan, P. R., on November 24, 1936, intestate and without leaving ascendants, his legitimate brothers being as follows: Francisco, Enrique, Francisca, Adolfo, Ernestina, and Hortensia Lanausse y Velpré."

On January 9, 1937, Herminia Tormes García filed, in the District Court of Guayama, a petition to have declared as the sole and universal heirs of Leopoldo Lanausse Velpré his aforesaid brothers and the petitioner in the usufructuary share provided by law. The brothers objected. They claimed to be the sole and universal heirs of the deceased and challenged the alleged right of the petitioner on the ground that the latter had ceased to be the widow of their ancestor upon contracting on October 13, 1930, a second marriage with Guillermo Beauchamp. A judgment was rendered for the respondents from which the petitioner appealed, and she urges that the court erred in construing section 761 of the Civil Code, 1930 ed., which reads as follows:

"Section 761.—The widower or widow who, on the death of his or her spouse is not divorced, or should be divorced through the fault of the deceased spouse, shall have a right to a portion in usufruct equal to that corresponding by way of legal portion to each of the legitimate children or descendants who have not received any advantage or extra portion.

"If only one legitimate child or descendant shall survive, the widower or widow shall have the usufruct of that third which is authorized by law to be applied to advantages or extra portions, the former preserving the naked ownership until, on the death of the surviving spouse, the full title is merged in him.

"If the spouses are separated by a suit for divorce, the result of the suit shall be awaited.

"The provisions of this section and of subsequent sections 762, 763, 764, 765 and 766 of this Code, shall apply in like manner to the intestate as well as the testate succession."

This section corresponds to section 834 of the Spanish Civil Code and was incorporated into the Civil Code of Puerto

Rico by an Act of March 9, 1905 (Comp. Stat. 1911, sec. 3880), as amended by Act No. 73 of March 9, 1911 (Session Laws, p. 234). The related sections cited therein and those cited in the corresponding provisions of the Spanish Civil Code, have, however, a different scope. Thus, whereas section 52 of the Spanish Civil Code provides that "marriage is dissolved by the death of one of the spouses," section 68 of our code (1930 ed.) prescribes that "marriage . . . . . may be dissolved before the death of either party only in the cases expressly provided for in this code," which are those enumerated in section 95 of the same code, to wit:

"Marriage is dissolved in the following cases:
"1. By the death of the husband or wife.
"2. By divorce legally obtained.
"3. If the marriage be declared null."

Whereas in Spain "divorce only produces a separation of the spouses" (section 104 of the Spanish Civil Code), section 105 of the Civil Code of Puerto Rico prescribes that "a divorce carries with it a complete dissolution of all matrimonial ties, and the division of all property and effects between the parties to the marriage."

So that as regards the effects of the marriage and the results of a divorce there is a marked difference between the legislation of both countries. In Spain ". . . . . . the death only of either spouse dissolves the matrimonial tie . . . . . ," because there "the perpetuity of the tie, the *consortium omnis vitæ* according to Modestino, constitutes the essence of the institution of matrimony, which only terminates with the application of the principle *mors omnia solvit*. . . . ." Manresa, *Comentarios al Código Civil Español*, 3d ed., vol. 1, p. 294. In Puerto Rico a divorce as well as death or a declaration of nullity dissolves marriage. In Spain the law rejects the divorce *quoad vinculum*, restricting it to the *quoad thorum et mutuam habitationem*. A divorce in Puerto Rico breaks, tears, dissolves the matrimonial tie during the lifetime of the spouses who are left at liberty to marry again.

Although section 761 of our Civil Code as well as its equivalent (834) of the Spanish Civil Code establish a clear right in favor of the widower or widow who, on the death of his or her spouse, is not divorced or should be divorced through the fault of the deceased spouse, it is clear from the foregoing that both sections attach a different meaning to the term "divorced" used therein, and therefore the rights established thereby must also be different.

Manresa, in his comments on section 834 of the Spanish Civil Code, equivalent to section 761 of our Civil Code, at page 501 of vol. 6 of his treatise, says:

"1. THE PERSON ENTITLED TO THE RIGHT GRANTED BY THESE SECTIONS is, under section 834 which lays down the general rule in this matter, the widower or widow who on the death of his or her spouse is not divorced or should be so by the fault of the deceased.

"The determining moment for the grant of the legitimate portion is when the death occurs. *If at that moment there is no spouse legally entitled to have that status, or, even, though there be one, he or she should be divorced by his or her own fault, the right established under section 834 and following sections can not accrue.*

"A. EXISTENCE OF SPOUSE.—*In order that there may be a spouse legally entitled to have that status there must exist a valid marriage producing civil effects and such marriage must be in full force and effect at the time of the death of the decedent.*

"That is why we think that section 834 is not applicable where the nullity of the marriage is involved, or in the absence of a record in the Civil Registry.

"1st. ANNULMENT OF MARRIAGE.—Marriage does not legally exist once its nullity has been declared. The law presumes, based on equity, that the marriage has produced certain effects as regards *bona fide* contracting parties; but marriage exists no longer once its nullity has been declared; those who were united become free to contract a new marriage. The effects of marriage that are respected are those that preceded the declaration of nullity, but not those subsequent thereto, because subsequently there can be no good faith, and once marriage is annulled a dissolution by reason of death can not be considered. This does not mean that recognized civil effects, rights accruing prior to the nullity, no longer subsist, but that the right to inherit which only accrues by reason of the death of a person can not be considered as one of them.

> *"Under the terms of section 834, the parties to an invalid marriage are not entitled to any legal portion, since upon the death of either of them the survivor was no longer the spouse of the other party. Moreover, if the law excludes the spouse who has been separated by a divorce decree if such surviving spouse was the guilty party, it is proper according to its spirit that there should be excluded also those who became separated by reason of a decree of nullity, since, after all, divorce implies a legal marriage not dissolved, and nullity implies an illegal and extinguished union, and if there are cases where even a lawful spouse is denied his or her legal portion, there should be none where such right should be bestowed on a person who at the proper time for the accrual of that right lacked the status of a spouse."* (Italics ours.)

Was the marriage contracted by Leopoldo Lanausse and Herminia Tormes García "in full force and effect" on November 24, 1936? In view of the effects produced by a divorce decree in Puerto Rico our answer must be in the negative. That which has been broken and dissolved can not subsist. After the divorce, out of the former relationship or ties there only remain occasionally children who serve as a remembrance of the dissolved union. Everything else is extinguished.

According to Manresa, *supra,* the right established by section 834 and the following sections of the Spanish Civil Code, corresponding to section 761 and successive sections of our Civil Code, can not accrue if at the time of the death of the decedent there is no spouse legally clothed with such status. And, as according to the same text writer, "in order that there may be a spouse legally entitled to have that status . . . the marriage must be in full force and effect at the time of the death of the decedent," if there is no marriage there can be no spouse, and if there is no spouse no right accrues. Therefore, section 761 of the Civil Code of Puerto Rico is not applicable to cases of divorce, and this is so even though the survivor should have been divorced by the fault of the deceased. The same reasoning on which Manresa (see his

above-quoted commentaries on section 834) based his view that said section is not applicable where the nullity of the marriage is concerned, or in the absence of a record thereof in the Civil Register seems to strengthen our conclusion that section 761 does not apply to cases of divorce. For, although it is true that an annulment of marriage and a divorce are distinct things, it is no less true, as established by section 105 of our Civil Code, that the effects produced by either of them are the same. Marriage is as nonexistent where its nullity has been declared as where a divorce has been decreed, and in either case the parties become free to contract a new marriage. If a dissolution by reason of death can not be considered after the marriage has been annulled, it can not be considered either where a divorce has been decreed. If under the terms of section 834, *supra,* the parties to an invalid marriage are not at all entitled to any legal portion since, upon the death of either of them, the survivor is no longer the spouse of the party who was united with him or her, similarly under section 761, *supra,* divorced persons ought not to be entitled to that right, since upon the death of either of the parties the survivor has already ceased to be the spouse of one with whom he or she was united.

The contention of the petitioner that she was the widow of the deceased at the time of the latter's death is untenable, for the further reason that at the time the petitioner had already contracted a new marriage and was the lawful wife of Guillermo Beauchamp. The appellant could not be at the same time a widow and a married woman. See 23 *Diccionario Enciclopédico Hispanoamericano* 746; *Rosenbloom* v. *Southern Pacific Co.,* 59 Cal. App. 102, 210 P. 53; 40 Cyc. 934; 2 Bouvier's Law Dictionary, 1228.

The judgment of the district court must be affirmed.