HERMINIA TORMES GARCÍA, peticionaria y apelante, EX PARTE; FRANCISCA, FRANCISCO, ENRIQUE, AGUSTÍN-LEÓN, conocido por ADOLFO, ERNESTINA y HORTENSIA LANAUSSE y VELPRÉ, opositores y apelados.

Núm. 7556.—*Sometido:* Mayo 11, 1938. *Resuelto:* Julio 6, 1938.

*C. Domínguez Rubio,* abogado de la apelante; *José C. Aponte,* abogado de los opositores apelados.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Los hechos de este caso, según aparecen de la estipulación sometida por las partes, son como sigue:

"1. Que doña Herminia Tormes García y don Leopoldo Lanausse contrajeron matrimonio en Salinas, el día 26 de noviembre de 1913.

"2. Que de este enlace tuvieron un hijo llamado Carlos Servando Lanausse y Tormes, que falleció antes que su padre.

"3. Que doña Herminia Tormes García presentó demanda de divorcio contra su esposo el referido Leopoldo Lanausse, ante la Corte de Distrito de Ponce, por abandono de éste para con ella, y se dictó sentencia con fecha 21 de diciembre de 1917, obteniendo la peticionaria la custodia y patria potestad de su hijo menor de edad. Que la sentencia de divorcio era firme.

"4. Que la citada doña Herminia Tormes García contrajo matrimonio con don Guillermo Beauchamp, en Ponce, P. R., el día 30 de octubre de 1930, y dicho matrimonio se encuentra en todo su vigor.

"5. Que don Leopoldo Lanausse falleció en San Juan, P. R., el día 24 de noviembre de 1936; que no dejó testamento ni tampoco ascendientes, habiendo dejado por hermanos legítimos los siguientes: Francisco, Enrique, Francisca, Adolfo, Ernestina y Hortensia, todos de apellidos Lanausse y Velpré."

El día 9 de enero de 1937 Herminia Tormes García dirigió una solicitud a la Corte de Distrito de Guayama pidiendo que se dictara el correspondiente auto de declaración de herederos, declarando únicos y universales herederos de Leopoldo Lanausse Velpré a sus hermanos ya referidos, y a la peticionaria en la cuota usufructuaria que marca la ley. Los hermanos se opusieron. Alegaron ser ellos los únicos y universales herederos del finado e impugnaron el alegado derecho de la peticionaria, por haber ésta dejado de ser viuda del causante al contraer en 13 de octubre de 1930 segundas nupcias con Guillermo Beauchamp. Dictada sentencia a favor de los opositores, apeló la peticionaria por entender que la corte erró al interpretar el artículo 761 del Código Civil, edición de 1930, que dice así:

"Art. 761.—El viudo o viuda que al morir su consorte no se hallare divorciado, o lo estuviere por culpa del cónyuge difunto, tendrá derecho a una cuota, en usufructo, igual a la que por legítima corresponda a cada uno de sus hijos o descendientes legítimos no mejorados.

"Si no quedara más que un solo hijo o descendiente legítimo, el viudo o viuda tendrá el usufructo del tercio destinado por la ley a constituir la mejora, conservando aquél la nuda propiedad, hasta que por fallecimiento del cónyuge supérstite se consolide en él el dominio.

"Si estuvieren los cónyuges separados por demanda de divorcio, se esperará el resultado del pleito.

"Las disposiciones de este artículo y de los subsiguientes 762, 763, 764, 765 y 766 de este código serán aplicables del propio modo a la sucesión intestada que a la sucesión testamentaria."

Este artículo es el equivalente del 834 del Código Civil español y fué incorporado al Código Civil de Puerto Rico por ley de 9 de marzo de 1905 (Comp. 3880), según fué enmendada por la número 73 de 9 de marzo de 1911 (Leyes de 1911, pág. 247, Comp. 3880). Sus concordantes y los concordantes de su equivalente, el 834 español, tienen, sin embargo, distinto alcance. Así, mientras el artículo 52 del Código español declara que "el matrimonio se disuelve por la muerte de uno de los cónyuges," el 68 del nuestro (ed. 1930) afirma que el matrimonio ". . . sólo podrá disolverse *antes de la muerte* de cualquiera de los dos cónyuges, en los casos expresamente previstos en este código," que son, a saber, los que enumera el artículo 95 del mismo cuerpo legal, que dice así:

"El vínculo del matrimonio se disuelve en los siguientes casos:
"1. Por la muerte del marido o de la mujer.
"2. Por el divorcio legalmente obtenido.
"3. Si el matrimonio se declarase nulo."

Y mientras el divorcio en España "sólo produce la suspensión de la vida común de los casados" (artículo 104 del Código Civil español), el 105 del de Puerto Rico estatuye que "el divorcio lleva consigo la ruptura completa del vínculo matrimonial y la separación de propiedad y bienes de todas clases entre los cónyuges."

De modo que en lo que respecta a los efectos del matrimonio y a las consecuencias del divorcio, existe marcada diferencia entre la legislación de un país y otro. En España ". . . sólo el fallecimiento de uno de los consortes desata el lazo existente . . ." porque allí "la perpetuidad del vínculo, el *consortium omnis vitae* de Modestino, constituye la esencia de la institución del matrimonio, el cual únicamente acaba con

la aplicación del principio *mors omnia solvit* . . .'' Manresa, Comentarios al Código Civil español, tomo 1, pág. 294, tercera edición. En Puerto Rico, el divorcio tanto como la muerte y la declaración de nulidad disuelven el matrimonio. En España la ley rechaza el divorcio *quoad vinculum,* circunscribiéndolo al *quoad thorum et mutuam habitationem.* El divorcio en Puerto Rico quebranta, rompe, disuelve el lazo matrimonial en vida de los cónyuges, a quienes deja en libertad de contraer nuevas nupcias.

Aunque tanto el artículo 761 de nuestro Código Civil como su equivalente el 834 del de España establecen un derecho claro a favor del viudo o viuda que al morir su consorte no se hallare divorciado o lo estuviere por culpa del cónyuge difunto, es obvio de lo que precede, que ambos artículos tienen distinto concepto del ''divorciado'' a que se refieren, por lo que distintos deben y han de ser también los derechos que establecen.

Comentando el artículo 834 del Código Civil español, equivalente al 761 del nuestro, dice Manresa a la página 501 del tomo sexto de su conocida obra:

''1. SUJETO DEL DERECHO CONCEDIDO EN ESTOS ARTÍCULOS.—Es, según el art. 834, que establece la regla general en esta materia, el viudo o viuda que al morir su consorte no se hallare divorciado, o lo estuviere por culpa del cónyuge premuerto.

''El momento determinante para la concesión de la legítima es el de la muerte del causante. *Si en ese momento no existe un cónyuge que pueda legalmente ostentar tal carácter, o, aún existiendo, se haya divorciado por su culpa, no puede nacer el derecho creado en los arts. 834 y siguientes.*

''(A) EXISTENCIA DEL CÓNYUGE.—*Para que exista cónyuge que pueda legalmente ostentar ese carácter, ha de mediar un matrimonio válido que produzca efectos civiles, y ha de subsistir ese matrimonio en toda su fuerza y validez en la época del fallecimiento del causante.*

''Por esta razón creemos que el art. 834 no es aplicable en caso de nulidad del matrimonio, o en caso de falta de inscripción en el registro civil.

"1º. NULIDAD DEL MATRIMONIO.—Declarada la nulidad, no existe legalmente matrimonio. La ley, fundándose en la equidad, presume que la unión ha producido determinados efectos respecto a los contrayentes de buena fe; pero declarado nulo el matrimonio, éste deja de existir; los que estuvieren unidos quedan en libertad de contraer otra unión. Los efectos del matrimonio que se respetan son los anteriores a la declaración de nulidad, nunca los posteriores, porque después la buena fe ya no puede exirtir, y, una vez anulada la unión, no cabe hablar de disolución por muerte. Esto no quiere decir que los efectos civiles reconocidos, los derechos nacidos antes de la nulidad, no sigan subsistiendo después, sino que entre ellos no puede contarse el derecho a la sucesión, que solamente nace por la muerte de una persona.

"*Las palabras del art. 834 rechazan todo derecho a legítima respecto a los contrayentes de un matrimonio nulo, pues al morir uno de ellos, el que sobrevive ya no era consorte del que con él se unió. Además, si la ley excluye al cónyuge separado por sentencia de divorcio cuando la culpa fué del sobreviviente, es propio de su espíritu el que también se excluya a los que quedaron separados por ejecutoria de nulidad, ya que, al fin, el divorcio indica un matrimonio legítimo, y no disuelto, y la nulidad envuelve una unión ilegal y extinguida, y si hay casos en que aún el consorte legítimo no percibe su cuota legitimaria, no debe haber ninguno en que se conceda tal derecho al que en la época del nacimiento del mismo no tiene la consideración de cónyuge.*" (Bastardillas nuestras.)

¿Subsistía "en toda su fuerza y validez" el día 24 de noviembre de 1936 el matrimonio entre Leopoldo Lanausse y Herminia Tormes García? Dados los efectos que conlleva en Puerto Rico una sentencia de divorcio, tenemos que contestar negativamente la pregunta. No puede subsistir lo que ha quedado roto y disuelto. Después del divorcio, de aquel lazo que llamamos vínculo, sólo quedan en ocasiones, hijos que evocan su recuerdo. Lo demás se extingue.

Según Manresa, supra, no puede nacer el derecho creado en los artículos 834 y siguientes del Código Civil español, equivalentes al 761 y siguientes de nuestro código, si en el momento de la muerte del causante, no existe un cónyuge que pueda legalmente ostentar tal carácter. Y como de acuerdo con el mismo autor, "para que exista cónyuge que pueda le-

galmente ostentar ese carácter . . . ha de subsistir un matrimonio en toda su fuerza y validez en la época del fallecimiento del causante,'' no subsistiendo matrimonio no existe el cónyuge, y no existiendo el cónyuge no nace el derecho. El artículo 761 del Código Civil de Puerto Rico no tiene, pues, aplicación en casos de divorcio, y ello es así aún cuando el cónyuge supérstite estuviere divorciado por culpa del difunto. Las mismas razones que tiene Manresa (véase ante donde se transcriben sus comentarios al artículo 834) para creer que dicho artículo no es aplicable en caso de nulidad del matrimonio o en caso de falta de inscripción en el Registro Civil, robustecen nuestro criterio de que el artículo 761 no tiene aplicación en casos de divorcio. Porque si bien es cierto que no puede confundirse la nulidad del matrimonio con el divorcio, conforme lo establece el artículo 105 de nuestro código, no es menos cierto que los efectos que la una y el otro producen son los mismos. Tan inexistente es el matrimonio cuando se declara su nulidad como cuando se decreta el divorcio, y en igual libertad de contraer otra unión quedan los cónyuges en un caso como en el otro. Si no cabe hablar de disolución por muerte una vez anulada la unión, tampoco cabe hablar de ella cuando se decreta el divorcio. Si las palabras del artículo 834 rechazan todo derecho a legítima respecto a los contrayentes de un matrimonio nulo, porque al morir uno de ellos el que sobrevive ya no era consorte del que con él se unió, también debe el artículo 761 rechazar ese derecho respecto a los divorciados, pues al morir uno de ellos el que sobrevive no puede ser consorte del que con él se unió.

La contención de la peticionaria de que ella era viuda del causante en la época del fallecimiento de éste es insostenible por la razón adicional de que en esa época la peticionaria ya había contraído nuevas nupcias y era la esposa legítima de Guillermo Beauchamp. No podía la apelante ser a un mismo tiempo viuda y casada. Véanse: Diccionario Enciclopédico

Hispanoamericano, Tomo 23, pág. 746; *Rosenbloom* v *Southern Pacific Co.,* 59 Cal. App. 102, 210 P. 53; 40 Cyc. 934; 2 "Bouvier's Law Dictionary" 1228.

*La sentencia de la corte de distrito debe ser confirmada.*

El Juez Asociado Señor De Jesús no intervino.